## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

ALLEN J. FARMER,                    :
                                   :
              Plaintiff,            :
                                   :
       v.                           :        Civ. No. 22-957 (FLW)(LHG)
                                   :
                                   :        **MEMORANDUM & ORDER**
SAMUEL PLUMERI, et al.,             :
                                   :
              Defendants.           :
                                   :

This matter has been opened to the Court by Allen J. Farmer's filing of an application to proceed *in forma pauperis* ("IFP application") and a civil complaint, alleging violations of his civil rights, pursuant to 42 U.S.C. § 1983.  At this time, the Court grants Plaintiff's IFP application.[1]

Under the Prison Litigation Reform Act of 1995 (the "PLRA"), district courts must review complaints in those civil actions in which a person is proceeding *in forma pauperis*.  *See* 28 U.S.C. § 1915(e)(2)(B).  The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  *Id.*  "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d

---

[1] It appears that Plaintiff was a convicted prisoner, residing at a halfway house, and on parole during the relevant time periods in the Complaint.  He has provided a private address and submitted the IFP form for non-prisoners, which the Court has granted.  As such, his Complaint is subject to screening pursuant to 28 U.S.C. § 1915(e)(2)(B).

220, 223 (3d Cir. 2000)); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)).  Here, Plaintiff's Complaint is subject to screening under 28 U.S.C. § 1915(e)(2)(B).

Plaintiff initially alleges that he was subjected to an illegal search and seizure having been searched four times, within the span of ten minutes.  Complaint at 3.  Plaintiff further alleges that each search was more invasive and included "making contact with [his] private region with force[.]" *Id.*  Plaintiff provides additional information about the alleged search in the "Statement of Claims" section of his Complaint.  He alleges that while he was at a treatment facility at Delany Hall, Officer Barron searched him four times after Plaintiff returned from work at the command of Officer Szybenyi.  *See* Complaint at 4.  According to the Complaint, Officer Barron made contact with Plaintiff's genitalia with his forearm, which was uncomfortable and painful, because Plaintiff was in his underwear and/or naked.  *Id.*  After Officer Barron found no contraband, he permitted Plaintiff to return to his housing unit but did not permit him to return to work, which eventually cost Plaintiff his job.  *Id.*

After Plaintiff filed an internal complaint and a sexual harassment complaint, he was harassed by "parole officers and staff" and was targeted for searches of his person and property. Plaintiff alleges that the retaliation continued on the "outside" where he has been regularly sanctioned by parole officers.  Plaintiff appears to allege that these sanctions include special conditions, GPS monitoring, and a no-contact order with his fiancé.  *See id.*   Plaintiff also seeks

to be free from arbitrary and punitive sanctions, including a GPS monitor, which allegedly caused his ankle to break on March 31, 2021.[2]  *See* Complaint at 3.

In the "Injuries" section of his Complaint, Plaintiff alleges that he suffered a broken ankle requiring three surgeries and physical therapy.  *See id.* at 5.   Plaintiff also lists injuries to his left knee, right hand, and lower back, which were treated at the emergency room.  *Id.*  Plaintiff also states that he was treated for anxiety, depression, and seizures, which began after he slipped on a flooded cell floor.  *Id.*  It is not clear how these other injuries are related to his claims for relief.  In his "Complaint and Request for an Injunction," ECF No. 1-3, Plaintiff also alleges he was assaulted by staff at Delaney Hall, *see id.* at 4, but he provides no other facts about this alleged assault and does not identify which of the Defendants, if any, assaulted him.  Plaintiff asks for damages and declaratory and injunctive relief.  *See id.* at 5.

The Court construes Plaintiff to bring civil rights claims pursuant to 42 U.S.C. § 1983.[3]  "Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States."  *Shuman v. Penn Manor School Dist.*, 422 F.3d 141, 146 (3d Cir. 2005).  "It is well settled that § 1983 does not confer any substantive rights, but merely 'provides a method for vindicating federal rights elsewhere conferred.'"  *Williams v. Pennsylvania Human Relations Comm'n*, 870 F.3d 294, 297 (3d Cir. 2017) (quoting *Hildebrand v. Allegheny Cty.*, 757 F.3d 99, 104 (3d Cir. 2014)).  To establish a claim under § 1983, Plaintiff must establish a deprivation of a federally protected right and that this deprivation was committed by a person

---

[2] Some of the allegations regarding the GPS monitoring appear to be cut off.

[3] The Court construes Plaintiff to sue the individual Defendants in their personal capacities for damages and in their official capacities for injunctive relief.  The Court does not construe Plaintiff to raise any state law claims.

acting under color of state law.  *Woloszyn v. County of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005).

The Court begins with Plaintiff's Eighth Amendment claims.  Plaintiff alleges in a conclusory manner that prison staff at Delaney Hall assaulted him.  After conviction, the Eighth Amendment serves as the primary source of substantive protection in cases where an inmate challenges a prison official's use of force as excessive and unjustified.  *See Whitley v. Albers*, 475 U.S. 312, 327 (1986).  In an excessive force claim, the central question is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *see also Wilkins v. Gaddy*, 559 U.S. 34 (2010); *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000).  Moreover, a properly stated Eighth Amendment claim must allege a subjective and objective element.  *Hudson*, 503 U.S. at 8.  First, it must appear from the complaint that the defendant official acted with a "sufficiently culpable state of mind."  *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).  Second, the conduct must have been objectively "harmful enough," or "sufficiently serious" to violate the Constitution.  *Id.* at 298, 303.

Here, Plaintiff does not provide sufficient facts about which Delaney Hall staff members assaulted him or the circumstances of the assault(s), such that the Court can assess whether any of the Defendants acted maliciously or sadistically to cause harm or whether the assaults were serious enough to violate the Constitution.  As such, the Court dismisses without prejudice the Eighth Amendment claims regarding the staff member assaults at Delaney Hall.

The Court also construes Plaintiff to raise civil rights claims related to the strip search by Officer Barron at Delaney Hall.  Where a convicted inmate alleges that the strip search was conducted in a physically abusive manner, the Eighth Amendment applies.  *See Jordan v. Cicchi*,

428 F. Appx. 195, 199-200 (3d Cir. 2011) (explaining that an excessive force claim arising from a strip search may proceed under either the Fourth Amendment or the Eighth Amendment, but the latter is "the primary source of protection after an individual's conviction"); *Robinson v. Ricci*, 2012 WL 1067909, at *17 n.6 (D.N.J. Mar. 29, 2012) (stating that, in addition to a possible Fourth Amendment violation, the "Eighth Amendment may be implicated where the strip search or visual body cavity search was conducted in a brutish and unreasonable manner"). Moreover, a strip search may violate the Eighth Amendment where it amounts to sexual abuse. *See, e.g., Ricks v. Shover*, 891 F.3d 468, 478 (3d Cir. 2018)( explaining that "objectively serious sexual contact" between corrections officers and inmates, includ[ing] sexualized fondling, coerced sexual activity, combinations of ongoing harassment and abuse, and exchanges of sexual activity for special treatment or to avoid discipline" would violate the Eighth Amendment, but affirming dismissal of inmate's sexual abuse claim with leave to amend).

Here, Plaintiff does not provide sufficient facts to suggest that any of the Defendants violated the Eighth Amendment by using <u>excessive</u> force or engaging in objectively serious sexual contact with him during the strip searches.  Plaintiff states only that the strip search involved "force" and that Officer Barron's forearm made contact with Plaintiff's genitalia. These sparse facts, without more, are insufficient to show either the subjective or objective elements of an Eighth Amendment claim.  As such, the Eighth Amendment claims are dismissed without prejudice as to Officer Barron and all Defendants for failure to state a claim for relief.

The Court also liberally construes Plaintiff to allege that the strip searches violated the Fourth Amendment.  To raise a Fourth Amendment claim, the prisoner must allege that the strip search was unreasonable.  *See Payton v. Vaughn*, 798 F. Supp. 258, 261-62 (E.D. Pa. 1992). Because prisons have a legitimate government interest in maintaining safety and keeping

contraband out of prisons, suspicionless strip searches do not violate the Fourth Amendment where officials conduct searches in a reasonable manner to maintain security and to prevent the introduction of contraband or weapons in the facility.  *See, e.g.*, *Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 621 F.3d 296, 309-11 (3d Cir. 2010).  Routine strip searches are also permissible as long as the searches are reasonable.  *See Millhouse v. Arbasak*, 373 Fed. App'x. 135, 137 (3d Cir. 2010) (holding that routinely strip-searching inmates when entering and exiting their cells does not violate the Constitution where the search is reasonable).  In *Parkell v. Danberg*, 833 F.3d 313, 329 (3d Cir. 2016), the Third Circuit explained that "[r]outine, suspicionless inmate search policies may sweep quite broadly and still be reasonable." The Third Circuit held, however, that that "thrice-daily bodily searches" of inmates in complete isolation in stripped down cells was not sufficiently related to legitimately penological purposes, as those inmates would not have the opportunity to possess contraband.[4]  *Id.* at 328-329 (finding that the prison's "security interests are not reasonably advanced by a blanket policy of frequently and intrusively searching inmates who have previously been thoroughly searched and held in a stripped-down isolation cell without human contact ever since").

The Third Circuit has also explained that strip searches conducted in abusive fashion that go beyond a visual inspection may violate Fourth Amendment.  *See, e.g.*, *Watson v. Sec. of Pennsylvania Dep't of Corr.*, 436 F. App'x 131, 136 (3d Cir. 2011) (per curiam); *see also McMillan v. Hughes*, Civ. No. 17-13435 (RMB), 2018 WL 3945467, at *6 (D.N.J. Aug. 16,

---

[4] In *Parkell*, the Third Circuit explained that "[a] 'visual body cavity search' extends to visual inspection of the anal and genital areas" and "[a] 'manual body cavity search' includes some degree of touching or probing of body cavities." *Parkell*, 833 F.3d at 327 (citing *Blackburn v. Snow*, 771 F.2d 556, 561 n.3 (1st Cir. 1985)). It is unclear whether the search at issue here was a visual or manual body cavity search.  Plaintiff is free to clarify the type of search that occurred if he chooses to file an Amended Complaint.

2018) (finding a strip search stated claim under the Fourth Amendment where the prison officials conducted the search of plaintiff in front of inmates and other unauthorized persons, made degrading comments about his body, and threatened his safety during the search).

Here, Plaintiff alleges that he was searched four times on a single occasion upon returning to Delaney Hall. The repeated search by Officer Barron appears to be a one-time occurrence, and Plaintiff does not plead facts to suggest that the searches occurred when he was in isolation with no opportunity for human contact. Although Plaintiff alleges that Officer Barron made forceful contact with Plaintiff's genitalia with his forearm, which was uncomfortable and painful, this single allegation, without more, fails to render the search unreasonable or abusive under the Fourth Amendment. The Court therefore dismisses without prejudice the Fourth Amendment strip search claim as to Officer Barron and all Defendants for failure to state a claim for relief.

Plaintiff also alleges that prison staff and parole officials retaliated against him for filing complaints about the strip searches. "Retaliating against a prisoner for the exercise of his constitutional rights is unconstitutional." *Bistrian v. Levi*, 696 F.3d 352, 376 (3d Cir. 2012); *White v. Napoleon*, 897 F.2d 103, 111-12 (3d Cir. 1990) ("Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under section 1983."). To state a claim for retaliation, a plaintiff must allege that: "(1) he engaged in constitutionally protected conduct[;] (2) he then suffered some adverse action caused by prison officials; and (3) a causal link existed between the protected conduct and the adverse action." *Obiegbu v. Werlinger*, 581 F. App'x 119, 122 (3d Cir, 2014) (citing *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001) ). The filing of grievances is protected conduct under

the First Amendment. *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (stating that filing of prison grievances constitutes protected conduct failing within ambit of First Amendment).

Here, Plaintiff fails to state which prison and/or parole staff retaliated against him for his complaints about the strip searches. Plaintiff also fails to provide sufficient facts showing a causal connection between his complaints about the strip searches and the alleged acts of retaliation. For these reasons, the Court dismisses without prejudice the First Amendment retaliation claims as to all Defendants for failure to state a claim for relief.

Plaintiff also alleges that he has been subjected to GPS monitoring without cause and contends that the GPS monitor caused him to break his ankle. The Court construes Plaintiff to challenge GPS monitoring as a condition of his parole.

To the extent Plaintiff has sued the New Jersey State Parole Board in connection with the GPS monitoring claim, he fails to state a claim for relief. It is well established that states and their agencies are not considered "persons" for purposes of section 1983. *See Will v. Dep't of State Police*, 491 U.S. 58, 65–66 (1989); *see also Madden v. N.J. State Parole Bd.*, 438 F.2d 1189, 1190 (3d Cir. 1971) ("[I]t has been squarely held in this Circuit ... that [a state parole board] is not a person within the language of ...Section 1983." (citations omitted)). The § 1983 claims against the New Jersey State Parole Board are dismissed with prejudice.

Plaintiff appears to raise a due process claim in connection with his conditions of parole. A parolee, however, "does not enjoy 'the absolute liberty to which every citizen is entitled, but only [a] conditional liberty properly dependent on observance of special parole restrictions.'" *Johnson v. Mondrosch*, 586 F. App'x 871, 874 (3d Cir. 2014) (per curiam) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972)). Thus, "[r]estrictions to a particular community, job or home, as well as restrictions on travel or movement, are standard conditions of parole[.]" *Johnson*, 586

F. App'x at 874 (citing *Morrissey*, 408 U.S. at 478).  Also, probationers and parolees are commonly subject to a number of conditions which will comport with the limited rights afforded to them – such as drug tests, restrictions on houses, jobs, travel, or the like.  *See, e.g.*, *United States v. Knights*, 534 U.S. 112, 119 (2001) (explaining that probationers are subject to reasonable conditions and have limited liberty interests);  *Griffin v. Wisconsin*, 483 U.S. 868, 874 (1987) (explaining that forms of supervised release such as probation are "form of punishment" and may lawfully include restrictions on housing, drug use, or the like).  In addition, the Fourth Amendment does not prohibit a parole officers from conducting a suspicionless search of a released prisoner whose conditions of release provide for suspicionless searches.  *See Samson v. California*, 547 U.S. 843, 847 (2006).  Relying on this premise, federal courts have upheld the use of GPS monitoring as a condition of supervised release.  *See, e.g., United States v. Ringgenberg*, 494 F. App'x 685, 685 (8th Cir. 2012) (unpublished); *United States v. Watson*, 204 F. App'x 309, 310 (4th Cir. 2006) (unpublished).

Here, Plaintiff fails to provide sufficient facts regarding his criminal conviction(s) and whether GPS monitoring was condition of his parole.  As such, he fails to state a due process claim regarding the GPS monitoring.  The Court therefore dismisses the due process claim without prejudice as to the remaining Defendants for failure to state a claim for relief.[5]

For the reasons explained in this Memorandum Opinion, Plaintiff's IFP application is granted, and the Complaint is dismissed in its entirety pursuant to the Court's screening authority

---

[5] It is not clear whether Plaintiff also seeks to bring an excessive force claim regarding his broken ankle.  An excessive force claim under § 1983 arising out of law enforcement conduct is based on the Fourth Amendment's protection from unreasonable seizures of the person. *Graham v. Connor*, 490 U.S. 386, 394–95 (1989).  A cause of action exists under § 1983 when a law enforcement officer uses force so excessive that it violates the Fourth and Fourteenth Amendments to the United States Constitution. *Brown v. Borough of Chambersburg*, 903 F.2d 274, 277 (3d Cir. 1990).  Here, Plaintiff does not provide sufficient facts showing that any of the

under § 1915(e).  Plaintiff may submit an amended complaint within 30 days of the date of this

Order if he can cure the deficiencies in his claims for relief.  If Plaintiff elects not to submit an

Defendants used excessive force in outfitting Plaintiff with the GPS monitoring device.  As such, this claim would be subject to dismissal for failure to state a claim for relief.

Amended Complaint, this dismissal will automatically convert to a dismissal with prejudice at the expiration of the 30-day period.

**IT IS**, on this 4th day of January 2023,

**ORDERED** that the Plaintiff's IFP application is GRANTED; and it is further

**ORDERED** that the claims brought pursuant to 42 U.S.C. § 1983 are dismissed pursuant to the Court's screening authority under 28 U.S.C. § 1915(e)(2)(B) as follows:

1) The § 1983 claims against the New Jersey State Parole Board are dismissed WITH PREJUDICE for failure to state a claim for relief;

2) The remaining § 1983 claims and Defendants are dismissed WITHOUT PREJUDICE for failure to state a claim for relief; and it is further

**ORDERED** that Plaintiff may submit an Amended Complaint within 30 days, along with a request to reopen this matter, to the extent he can cure the deficiencies in the claims the Court has dismissed without prejudice; and it is further

**ORDERED** that if Plaintiff elects not to submit an Amended Complaint, this dismissal will automatically convert to a dismissal with prejudice at the expiration of the 30-day period to amend; and it is further

**ORDERED** that the Clerk of the Court shall send a copy of this Memorandum and Order to Plaintiff at the address on file and CLOSE this case accordingly.

/s/ Freda L. Wolfson
Freda L. Wolfson
U.S. Chief District Judge

11