<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| ALLEN J. FARMER, | : | |
| | : | |
| Plaintiff, | : | Civ. No. 22-957 (GC) (TJB) |
| | : | |
| v. | : | |
| | : | |
| SAMUEL PLUMERI, | : | **OPINION** |
| | : | |
| Defendants. | : | |
| | : | |

<u>**CASTNER, District Judge**</u>

I.     **INTRODUCTION**

Plaintiff, Allen J. Farmer ("Plaintiff" or "Farmer"), is proceeding *pro se* with a proposed Amended Complaint filed pursuant to 42 U.S.C. § 1983.[1]  (*See* ECF 4).  Previously, this Court screened Plaintiff's original Complaint.  (*See* ECF 3).  The Court dismissed Plaintiff's claims against the New Jersey State Parole Board with prejudice and against the remaining Defendants without prejudice.  (*See id.*).  Subsequently, Plaintiff filed a proposed Amended Complaint (*see* ECF 4) that is now before the Court.

The allegations of the Amended Complaint must be screened pursuant to 28 U.S.C. § 1915(e)(2)(B) to determine whether they are frivolous or malicious, fail to state a claim upon which relief may be granted, or whether the allegations seek monetary relief from a defendant who is immune from suit.  For the following reasons, Plaintiff's Amended Complaint is dismissed with prejudice in part and without prejudice in part.

---

[1] Like Plaintiff's original Complaint, this Court does not construe Plaintiff's Amended Complaint as raising state law claims.  (*See* ECF 3 at 3 n.3).

## II.        FACTUAL AND PROCEDURAL BACKGROUND

The allegations of the Amended Complaint are construed as true for purposes of this screening opinion.   Plaintiff names the following Defendants in the caption of his Amended Complaint:

1. The State of New Jersey;

2. The New Jersey State Parole & Police Board;

3. Gurbir Grewal;

4. Samuel J. Plumeri Jr.;

5. Officer Walck;

6. Sgt. Ortiz;

7. Rothfitz;

8. Barron;

9. Ofcr. Szybenyi[2];

10. Sgt. K. Ward;

11. O. Mueller;

12. Dr. Abu Ahsan; and

13. John Does 1-100.

(ECF 4 at 1).  Plaintiff was a convicted prisoner, residing at a halfway house, but also apparently on parole during the relevant time periods giving rise to Plaintiff's claims.  (*See* ECF 3 at 1 n.1). While at Delaney Hall treatment facility, Officer Barron searched Plaintiff four times at the behest of Officer Szybenyi.  (*See* ECF 4 at 4).  Officer Barron made contact with Plaintiff's genitalia with

---

[2] Plaintiff uses a different spelling of this Defendant's name in the body of his Amended Complaint.  For consistency purposes, this Court will use the spelling of this Defendant's name as stated in the caption of the Amended Complaint.

his inner forearm and used increasing pressure, which made it extremely uncomfortable and painful as Plaintiff was stripped to his underwear and was naked.  (*See id.*).

Plaintiff asserts he filed an internal and sexual harassment complaint.  (*See id.*).  Plaintiff alleges he began to be harassed and targeted by parole officers and staff who also denied Plaintiff visitor access for no cause.  (*See id.*).  Such officers repeatedly searched Plaintiff's living quarters, allowed a dog to walk on his bed and eat his food.  (*See id.*).  Furthermore, Plaintiff's personal belongings were mishandled, which caused damage.  (*See id.*).  Ultimately, Plaintiff lost his job and was released with no address.  (*See id.*).

Plaintiff also states that this harassment continued "outside."  (*See id.*).  He alludes to sanctions, which included GPS monitoring and a no contact order with his fiancé.  (*See id.*).

Next, Plaintiff states that he returned to Delaney Hall on or about March 6, 2020, on an erroneous parole violation.  (*See id.*).  Plaintiff states that he was subjected to physical assault by staff and sent to the Central Reception and Assignment Facility ("CRAF").  (*See id.*).  While at CRAF, Plaintiff slipped and fell when a radiator in the corridor across the hall flooded one evening.  (*See id.*).  Plaintiff hit his head and lost consciousness.  (*See id.*).

Plaintiff was sent to St. Francis Medical Center ("SFMC") whereupon he had a seizure during an MRI.  (*See id.*).  Plaintiff was told that he was being admitted to the hospital for observation.  (*See id.*).  Plaintiff did not have a history of seizures.  (*See id.*).  However, Dr. Ahsan insisted to the treating physician, Dr. Michelle Harper at SFMC, that Plaintiff be released to his care, despite not ever having treated Plaintiff for seizures as well as not being certified to treat seizures.  (*See id.*).  Plaintiff was then released to the care of Dr. Ahsan and assigned to the infirmary at the New Jersey State Prison ("NJSP").  (*See id.*).  Plaintiff was unable to walk, had no handicap accommodations, was denied phone calls and showers, and had to spend days in his

own waste because he was regularly unable to make it to the toilet to relieve himself.  (*See id.*). Plaintiff was denied pain and seizure medications during his time at NJSP.[3]

Plaintiff's Amended Complaint also includes allegations that occurred in 2022 after he had been released.  For example, Plaintiff's ankle monitor caused him to roll his ankle thereby causing a fracture, which required three surgeries.  (*See id.*).  Plaintiff further alleges that he has been electrocuted two times by the ankle monitor.  (*See id.*).  According to Plaintiff, Parole Officer Mueller is assigned to the electronic monitoring unit.  (*See id.*).

Plaintiff states that Detective Moreno, along with unknown members of the Warren County Police and the New Jersey Parole Board, have targeted Plaintiff's use of electronic devices by a cell tower simulator, which infringes upon Plaintiff's right to privacy.  (*See id.*).  Plaintiff further claims this is being done in retaliation for Plaintiff assisting members of the community, in writing formal complaints for harassment and abuse of power.  (*See id.*).

Plaintiff claims he has been subjected to illegal seizures of his person and intrusions of his home without a warrant, which includes the manipulation of his cellphone, laptop and home security system.

In the injuries section of his Amended Complaint, Plaintiff notes his broken ankle.  He further claims anxiety, which includes the loss of sleep.  (*See id.* at 5).  Plaintiff also explains that he now has regular seizures since hitting his head and suffers from light sensitivity.  (*See id.*).

Plaintiff requests monetary damages and "declaratory damages in the form of a policy to address the abuse of authority [ ] and power by parole and state police with respect to the use of the cell tower simulator and electronic monitoring device[.]"  (*See id.*).

---

[3] Plaintiff identifies these allegations as occurring in 2019.  However, the Court presumes 2019 is a typo given Plaintiff earlier in his Amended Complaint indicated that he slipped and fell in March 2020.

### III.    LEGAL STANDARD

Under the Prison Litigation Reform Act ("PLRA"), district courts review complaints in civil actions in which a plaintiff is proceeding *in forma pauperis*. *See* 28 U.S.C. § 1915(e)(2)(B). The PLRA directs a court to *sua sponte* dismiss any claim that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B).

"The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)). That standard is set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). To survive a court's screening for failure to state a claim, the complaint must allege 'sufficient factual matter' to show that the claim is facially plausible. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). "[A] pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

*Pro se* pleadings are liberally construed. *See Haines v. Kerner*, 404 U.S. 519 (1972). Nevertheless, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim," *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

In this case, Plaintiff seeks relief in part under 42 U.S.C. § 1983.  A plaintiff may have a cause of action under § 1983 for certain violations of constitutional rights.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983.  Thus, to state a claim for relief under § 1983, a plaintiff must allege first, the violation of a right secured by the Constitution or laws of the United States, and second, that the alleged deprivation was committed or caused by a person acting under color of state law.  *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (citations omitted); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

## IV.   DISCUSSION

A.  State of New Jersey & the State of New Jersey Parole and Police Board

Plaintiff names the State of New Jersey and the State of New Jersey Parole and Police Board as Defendants in the caption of his Amended Complaint.  However, as this Court noted in its prior screening opinion of Plaintiff's original Complaint:

> [i]t is well established that states and their agencies are not considered "persons" for purposes of section 1983.  *See Will v. Dep't of State Police*, 491 U.S. 58, 65–66 (1989); *see also Madden v. N.J. State Parole Bd.*, 438 F.2d 1189, 1190 (3d Cir. 1971) ("[I]t has been squarely held in this Circuit . . . that [a state parole board] is not a person within the language of . . . Section 1983." (citations omitted)).

*Farmer v. Plumeri*, No. 22-957, 2023 WL 35869, at *4 (D.N.J. Jan. 4, 2023).

The same reasoning holds true with respect to Plaintiff's claims against these two Defendants in his Amended Complaint; namely that both of these Defendants are not "persons" within the § 1983 definition.  Accordingly, Plaintiff's claims against the State of New Jersey and the State of New Jersey Parole and Police Board are dismissed with prejudice for failure to state a claim upon which relief may be granted.

B. <u>Excessive Force Generally at Delaney Hall</u>

Plaintiff alleges in conclusory fashion that he was assaulted by staff at Delaney Hall. Plaintiff raised a similar allegation in his original Complaint.  This Court found similar allegations to be insufficient to state a claim.  Indeed, this Court noted as follows:

> [t]he Court begins with Plaintiff's Eighth Amendment claims. Plaintiff alleges in a conclusory manner that prison staff at Delaney Hall assaulted him.  After conviction, the Eighth Amendment serves as the primary source of substantive protection in cases where an inmate challenges a prison official's use of force as excessive and unjustified.  *See Whitley v. Albers*, 475 U.S. 312, 327 (1986).  In an excessive force claim, the central question is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *see also Wilkins v. Gaddy*, 559 U.S. 34 (2010); *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000).  Moreover, a properly stated Eighth Amendment claim must allege a subjective and objective element.  *Hudson*, 503 U.S. at 8.  First, it must appear from the complaint that the defendant official acted with a "sufficiently culpable state of mind."  *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).  Second, the conduct must have been objectively "harmful enough," or "sufficiently serious" to violate the Constitution.  *Id.* at 298, 303.

> Here, Plaintiff does not provide sufficient facts about which Delaney Hall staff members assaulted him or the circumstances of the assault(s), such that the Court can assess whether any of the Defendants acted maliciously or sadistically to cause harm or whether the assaults were serious enough to violate the Constitution. As such, the Court dismisses without prejudice the Eighth Amendment claims regarding the staff member assaults at Delaney Hall.

*Farmer*, 2023 WL 35869, at *2.

Plaintiff's allegations in his Amended Complaint related to these assaults suffer from similar defects as they did in his original Complaint.  Specifically, Plaintiff does not provide sufficient facts or identify which staff members assaulted him.  Thus, Plaintiff has not stated with facial plausibility any Defendants that may have violated the Eight Amendment.  Accordingly, for similar reasons, this claim is dismissed without prejudice for failure to state a claim upon which relief may be granted.

C.  <u>Strip Search & Excessive Force Associated with Strip Search</u>

Plaintiff's allegations regarding the strip search at Delaney Hall are essentially identical to the allegations raised in his original Complaint.  The Court determined that Plaintiff had failed to state a claim upon which relief may be granted noting as follows:

> The Court also construes Plaintiff to raise civil rights claims related to the strip search by Officer Barron at Delaney Hall.  Where a convicted inmate alleges that the strip search was conducted in a physically abusive manner, the Eighth Amendment applies.  *See Jordan v. Cicchi*, 428 F. Appx. 195, 199-200 (3d Cir. 2011) (explaining that an excessive force claim arising from a strip search may proceed under either the Fourth Amendment or the Eighth Amendment, but the latter is "the primary source of protection after an individual's conviction"); *Robinson v. Ricci*, 2012 WL 1067909, at *17 n.6 (D.N.J. Mar. 29, 2012) (stating that, in addition to a possible Fourth Amendment violation, the "Eighth Amendment may be implicated where the strip search or visual body cavity search was conducted in a brutish and unreasonable manner").  Moreover, a strip search may violate the Eighth Amendment where it amounts to sexual abuse.  *See, e.g., Ricks v. Shover*, 891 F.3d 468, 478 (3d Cir. 2018) (explaining that "objectively serious sexual contact" between corrections officers and inmates, includ[ing] sexualized fondling, coerced sexual activity, combinations of ongoing harassment and abuse, and exchanges of sexual activity for special treatment or to avoid discipline" would violate the Eighth Amendment, but affirming dismissal of inmate's sexual abuse claim with leave to amend).

Here, Plaintiff does not provide sufficient facts to suggest that any of the Defendants violated the Eighth Amendment by using excessive force or engaging in objectively serious sexual contact with him during the strip searches. Plaintiff states only that the strip search involved "force" and that Officer Barron's forearm made contact with Plaintiff's genitalia. These sparse facts, without more, are insufficient to show either the subjective or objective elements of an Eighth Amendment claim. As such, the Eighth Amendment claims are dismissed without prejudice as to Officer Barron and all Defendants for failure to state a claim for relief.

The Court also liberally construes Plaintiff to allege that the strip searches violated the Fourth Amendment. To raise a Fourth Amendment claim, the prisoner must allege that the strip search was unreasonable. *See Payton v. Vaughn*, 798 F. Supp. 258, 261-62 (E.D. Pa. 1992). Because prisons have a legitimate government interest in maintaining safety and keeping contraband out of prisons, suspicionless strip searches do not violate the Fourth Amendment where officials conduct searches in a reasonable manner to maintain security and to prevent the introduction of contraband or weapons in the facility. *See, e.g.*, *Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 621 F.3d 296, 309-11 (3d Cir. 2010). Routine strip searches are also permissible as long as the searches are reasonable. *See Millhouse v. Arbasak*, 373 Fed. App'x. 135, 137 (3d Cir. 2010) (holding that routinely strip-searching inmates when entering and exiting their cells does not violate the Constitution where the search is reasonable). In *Parkell v. Danberg*, 833 F.3d 313, 329 (3d Cir. 2016), the Third Circuit explained that "[r]outine, suspicionless inmate search policies may sweep quite broadly and still be reasonable." The Third Circuit held, however, that . . . "thrice-daily bodily searches" of inmates in complete isolation in stripped down cells was not sufficiently related to legitimately penological purposes, as those inmates would not have the opportunity to possess contraband. *Id.* at 328-329 (finding that the prison's "security interests are not reasonably advanced by a blanket policy of frequently and intrusively searching inmates who have previously been thoroughly searched and held in a stripped-down isolation cell without human contact ever since").

The Third Circuit has also explained that strip searches conducted in abusive fashion that go beyond a visual inspection may violate Fourth Amendment. *See, e.g.*, *Watson v. Sec. of Pennsylvania Dep't of Corr.*, 436 F. App'x 131, 136 (3d Cir. 2011) (per curiam); *see also McMillan v. Hughes*, Civ. No. 17-13435 (RMB), 2018 WL 3945467, at *6 (D.N.J. Aug. 16, 2018) (finding a strip search stated claim under the Fourth Amendment where the prison officials

conducted the search of plaintiff in front of inmates and other unauthorized persons, made degrading comments about his body, and threatened his safety during the search).

Here, Plaintiff alleges that he was searched four times on a single occasion upon returning to Delaney Hall. The repeated search by Officer Barron appears to be a one-time occurrence, and Plaintiff does not plead facts to suggest that the searches occurred when he was in isolation with no opportunity for human contact. Although Plaintiff alleges that Officer Barron made forceful contact with Plaintiff's genitalia with his forearm, which was uncomfortable and painful, this single allegation, without more, fails to render the search unreasonable or abusive under the Fourth Amendment. The Court therefore dismisses without prejudice the Fourth Amendment strip search claim as to Officer Barron and all Defendants for failure to state a claim for relief.

*Farmer*, 2023 WL 35869, at *2–3 (footnote omitted).

The Court's prior reasoning holds true with respect to Plaintiff's essentially identical allegations in his Amended Complaint related to the strip search and/or any claim of excessive force during the strip search. *See, e.g.*, *Ricks*, 891 F.3d at 475 (noting not every malevolent touch by a prison guard gives rise to a federal cause of action). Accordingly, this claim is dismissed without prejudice for failure to state a claim upon which relief may be granted.

D.   Retaliation/Strip Search

Plaintiff claims in his Amended Complaint that he was retaliated against for filing complaints related to the strip search. Similar allegations were considered and dismissed without prejudice by this Court in screening Plaintiff's original Complaint. Indeed, the Court noted as follows:

Plaintiff also alleges that prison staff and parole officials retaliated against him for filing complaints about the strip searches. "Retaliating against a prisoner for the exercise of his constitutional rights is unconstitutional." *Bistrian v. Levi*, 696 F.3d 352, 376 (3d Cir. 2012); *White v. Napoleon*, 897 F.2d 103, 111-12 (3d Cir. 1990) ("Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable

under section 1983."). To state a claim for retaliation, a plaintiff must allege that: "(1) he engaged in constitutionally protected conduct[;] (2) he then suffered some adverse action caused by prison officials; and (3) a causal link existed between the protected conduct and the adverse action." *Obiegbu v. Werlinger*, 581 F. App'x 119, 122 (3d Cir. 2014) (citing *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)). The filing of grievances is protected conduct under the First Amendment. *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (stating that filing of prison grievances constitutes protected conduct failing within ambit of First Amendment).

Here, Plaintiff fails to state which prison and/or parole staff retaliated against him for his complaints about the strip searches. Plaintiff also fails to provide sufficient facts showing a causal connection between his complaints about the strip searches and the alleged acts of retaliation. For these reasons, the Court dismisses without prejudice the First Amendment retaliation claims as to all Defendants for failure to state a claim for relief.

*Farmer*, 2023 WL 35869, at *4 (D.N.J. Jan. 4, 2023).

Plaintiff's retaliation claims related to his strip search complaints in his Amended Complaint fail for similar reasons as discussed by this Court in analyzing Plaintiff's allegations in his original Complaint on these claims. As with Plaintiff's original Complaint, Plaintiff's Amended Complaint fails to state with any facial plausibility which particular staff members retaliated against him for his complaints about the strip searches. Accordingly, this claim is dismissed without prejudice for failure to state a claim upon which relief may be granted.

E. Destruction/Damage of Personal Property

Next, Plaintiff alludes to his property being damaged during the course of searches while at Delaney Hall. Such a claim may implicate the Fourteenth Amendment's Due Process Clause. However,

[a]n unauthorized deprivation of property by a state actor, whether intentional or negligent, does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available. *Hudson v. Palmer*, 468 U.S. 517, 530–36

> (1984); *Parratt v. Taylor*, 451 U.S. 527, 543–44 (1981), *overruled in part on other grounds, Daniels v. Williams*, 474 U.S. 327, 328 (1986). In *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 435–36 (1982), the Supreme Court explained, however, that post-deprivation remedies do not satisfy the Due Process Clause if the deprivation of property is accomplished pursuant to established state procedure rather than through random, unauthorized action.

*Stokes v. Lanigan*, No. 12–1478, 2012 WL 4662487, at *4 (D.N.J. Oct. 2, 2012).

New Jersey provides a post-deprivation remedy to potential plaintiffs for unauthorized deprivation of property by public employees by suing defendants under the New Jersey Tort Claims Act. *See* N.J. Stat. Ann. § 59:1–1, *et seq.*; *see also Love v. New Jersey Dep't of Corr.*, No. 14-5629, 2015 WL 2226015, at *5 (D.N.J. May 12, 2015) (noting New Jersey provides a proper post-deprivation remedy for unauthorized deprivation of property through the New Jersey Tort Claims Act). As New Jersey provides Plaintiff with an adequate post-deprivation remedy, Plaintiff can bring a due process claim if the deprivation of his property was due to a state procedure or policy. *See Stokes*, 2012 WL 4662487, at *4 (citing *Logan*, 455 U.S. at 435-36). However, Plaintiff does not allege that the damage and/or destruction of his property was accomplished through an established state procedure. Accordingly, Plaintiff fails to state a federal constitutional due process claim with respect to the purported damage/destruction of his personal property. Therefore, to the extent Plaintiff is seeking to assert a *federal* claim, it is dismissed without prejudice for failure to state a claim upon which relief may be granted.

F. Medical Care

Next, Plaintiff raises claims related to the medical care (or lack thereof), he received upon being discharged from SFMC and while at NJSP. The Court interprets Plaintiff's allegations as raising two separate distinct claims as to his medical care. The first is specifically against Dr. Ahsan for asking the doctor at SFMC to release Plaintiff to his care. The second interpreted claim

relates to the purported lack of care Plaintiff received while in the infirmary at NJSP upon his

return from SFMC.

> For the delay or denial of medical care to rise to a violation of the
> Eighth Amendment's prohibition against cruel and unusual
> punishment, a prisoner must demonstrate "(1) that defendants were
> deliberately indifferent to [his] medical needs and (2) that those
> needs were serious." *Rouse v. Plantier,* 182 F.3d 192, 197 (3d Cir.
> 1999). Deliberate indifference requires proof that the official
> "knows of and disregards an excessive risk to inmate health or
> safety." *Natale v. Camden Cnty. Corr. Facility,* 318 F.3d 575, 582
> (3d Cir. 2003) (quoting *Farmer v. Brennan,* 511 U.S. 825, 837
> (1994)). We have found deliberate indifference where a prison
> official: "(1) knows of a prisoner's need for medical treatment but
> intentionally refuses to provide it; (2) delays necessary medical
> treatment based on a nonmedical reason; or (3) prevents a prisoner
> from receiving needed or recommended treatment." *Rouse,* 182
> F.3d at 197. Deference is given to prison medical authorities in the
> diagnosis and treatment of patients, and courts "disavow any attempt
> to second-guess the propriety or adequacy of a particular course of
> treatment . . . (which) remains a question of sound professional
> judgment." *Inmates of Allegheny Cnty. Jail v. Pierce,* 612 F.2d 754,
> 762 (3d Cir. 1979) (quoting *Bowring v. Godwin,* 551 F.2d 44, 48
> (4th Cir. 1977)). Allegations of negligent treatment or medical
> malpractice do not trigger constitutional protections. *Estelle v.
> Gamble,* 429 U.S. 97, 105-06 (1976).

*Pierce v. Pitkins,* 520 F. App'x 64, 66 (3d Cir. 2013). Deliberate indifference can also be found

"where the prison official persists in a course of treatment in the face of resultant pain and risk of

permanent injury." *See McCluskey v. Vincent,* 505 F. App'x 199, 202 (3d Cir. 2012) (internal

quotation marks and citation omitted). "A medical need is serious if it 'has been diagnosed by a

physician as requiring treatment,' or if it 'is so obvious that a lay person would easily recognize

the necessity for a doctor's attention.'" *See Mitchell v. Beard,* 492 F. App'x 230, 236 (3d Cir.

2012) (*quoting Atkinson v. Taylor*, 316 F.3d 257, 272-73 (3d Cir. 2003) (quoting *Monmouth Cnty.

Inst. Inmates v. Lanzaro,* 834 F.2d 326, 347 (3d Cir. 1987))).

In this case, Dr. Ahsan purportedly disagreed with the need to have Plaintiff admitted to the hospital for his seizures.  This disagreement between Dr. Ahsan and the SFMC doctor in and of itself does not automatically rise to the level of deliberate indifference.  *See McCabe v. Pennsylvania Dep't of Corr.*, 523 F. App'x 858, 860 (3d Cir. 2013) (citing *See Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (1987)); *see also Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979).  Indeed, Plaintiff admits in his Amended Complaint that he was transported from the hospital to the NJSP's infirmary, presumably to receive ongoing care.  Given that Plaintiff's allegations amount to a purported disagreement between doctors regarding where best to treat Plaintiff, his deliberate indifference claim against Dr. Ahsan is dismissed without prejudice for failure to state a claim upon which relief may be granted as such a disagreement does not rise to the level of deliberate indifference.

Next, Plaintiff asserts that the level of care he received for his pain and seizures while at the NJSP infirmary was inadequate.  For example, Plaintiff claims that he was not properly provided his pain and seizure medication.  However, Plaintiff's Amended Complaint fails to state with any facial plausibility the personal involvement of any Defendant with respect to the care, or lack thereof, he received while at the infirmary.  Furthermore, to the extent that Plaintiff brings this claim against Dr. Ahsan under a theory of *respondeat superior*, such liability cannot rest under that theory in a § 1983 action.  *See Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015).

Plaintiff may also be asserting a claim against Dr. Ahsan as a supervisor.  Supervisory liability generally requires some affirmative conduct by the supervisor, such as a supervisor's implementation or maintenance of a policy, practice, or custom that caused the plaintiff constitutional harm.  *See Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016); *Santiago v.*

14

*Warminster Township*, 629 F.3d 121, 129 n.5 (3d Cir. 2010).  There are two potential theories of supervisory liability.  *See A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004).  Under the first theory, a defendant may be sued as a policy maker "if it is shown that such defendant, 'with deliberate indifference to the consequences, established and maintained a policy, custom, or practice which directly caused [the] constitutional harm.'"  *Id.* (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)).  The second theory of liability provides a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations.  *See Baker v. Monroe Township*, 50 F.3d 1186, 1190–91 (3d Cir. 1995).

Plaintiff's Amended Complaint fails to make out a supervisory liability claim against Dr. Ahsan under either supervisory theory of liability based on the care, or lack thereof, he received at the NJSP's infirmary.  Plaintiff does not allege affirmative conduct by Dr. Ahsan related to his care at the NJSP's infirmary, nor does he allege that Dr. Ahsan maintained a policy, practice or custom related to the lack of care Plaintiff received at the infirmary.  Accordingly, this claim is also dismissed without prejudice for failure to state a claim upon which relief may be granted.

G.  <u>GPS Monitor/No Contact Order</u>

Plaintiff next raises allegations related to his GPS ankle monitor as well as his no contact order with his fiancé.  Plaintiff may be attempting to assert both a due process claim related to these conditions as well as an excessive force claim related to the GPS device which purportedly caused Plaintiff injury.  The Court presumes that the GPS and no contact order are conditions of Plaintiff's parole.

In screening Plaintiff's original Complaint, the Court addressed the issues with Plaintiff's

due process claims related to the conditions of his parole as follows:

> Plaintiff appears to raise a due process claim in connection with his conditions of parole. A parolee, however, "does not enjoy 'the absolute liberty to which every citizen is entitled, but only [a] conditional liberty properly dependent on observance of special parole restrictions.'" *Johnson v. Mondrosch*, 586 F. App'x 871, 874 (3d Cir. 2014) (per curiam) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972)). Thus, "[r]estrictions to a particular community, job or home, as well as restrictions on travel or movement, are standard conditions of parole[.]" *Johnson*, 586 F. App'x at 874 (citing *Morrissey*, 408 U.S. at 478). Also, probationers and parolees are commonly subject to a number of conditions which will comport with the limited rights afforded to them – such as drug tests, restrictions on houses, jobs, travel, or the like. *See, e.g.*, *United States v. Knights*, 534 U.S. 112, 119 (2001) (explaining that probationers are subject to reasonable conditions and have limited liberty interests); *Griffin v. Wisconsin*, 483 U.S. 868, 874 (1987) (explaining that forms of supervised release such as probation are "form of punishment" and may lawfully include restrictions on housing, drug use, or the like). In addition, the Fourth Amendment does not prohibit [ ] parole officers from conducting a suspicionless search of a released prisoner whose conditions of release provide for suspicionless searches. *See Samson v. California*, 547 U.S. 843, 847 (2006). Relying on this premise, federal courts have upheld the use of GPS monitoring as a condition of supervised release. *See, e.g., United States v. Ringgenberg*, 494 F. App'x 685, 685 (8th Cir. 2012) (unpublished); *United States v. Watson*, 204 F. App'x 309, 310 (4th Cir. 2006) (unpublished).
>
> Here, Plaintiff fails to provide sufficient facts regarding his criminal conviction(s) and whether GPS monitoring was a condition of his parole. As such, he fails to state a due process claim regarding the GPS monitoring. The Court therefore dismisses the due process claim without prejudice as to the remaining Defendants for failure to state a claim for relief.

*Farmer*, 2023 WL 35869, at *4–5.

For essentially the reasons discussed above, Plaintiff's Amended Complaint similarly fails

to state a due process claim related to the GPS and no contact order. Indeed, Plaintiff fails to allege

with sufficient facts his criminal convictions and/or whether the GPS monitoring and/or no contact order were part of a condition of his parole.

With respect to excessive force and the GPS device, the Court also finds that Plaintiff has failed to state a claim upon which relief may be granted.  Indeed, such a claim suffers a fate like the allegations raised by Plaintiff in his original Complaint.  In screening Plaintiff's original Complaint, this Court noted as follows:

> An excessive force claim under § 1983 arising out of law enforcement conduct is based on the Fourth Amendment's protection from unreasonable seizures of the person.  *Graham v. Connor*, 490 U.S. 386, 394–95 (1989).  A cause of action exists under § 1983 when a law enforcement officer uses force so excessive that it violates the Fourth and Fourteenth Amendments to the United States Constitution.  *Brown v. Borough of Chambersburg*, 903 F.2d 274, 277 (3d Cir. 1990).  Here, Plaintiff does not provide sufficient facts showing that any of the Defendants used excessive force in outfitting Plaintiff with the GPS monitoring device. As such, this claim would be subject to dismissal for failure to state a claim for relief.

*Farmer*, 2023 WL 35869, at *5 n.5.

Plaintiff's Amended Complaint suffers from similar defects related to this claim.  Indeed, Plaintiff fails to allege facts with any facial plausibility that any Defendants used excessive force in outfitting Plaintiff with the GPS device.  Thus, this claim is dismissed without prejudice for failure to state a claim upon which relief may be granted.

H.  Retaliation for Community Complaints

Plaintiff next asserts that he is being retaliated against for supporting and helping to craft community-based complaints.  The Court has already outlined the elements needed to state a retaliation claim.  To reiterate, Plaintiff must allege that "(1) he engaged in constitutionally protected conduct[;] (2) he then suffered some adverse action caused by prison officials; and (3) a

causal link existed between the protected conduct and the adverse action." *Obiegbu*, 581 F. App'x at 122 (citing *Rauser*, 241 F.3d at 333).

Plaintiff's retaliation allegations on this claim are vague and conclusory.  The purported adverse action is an unspecified attempt by Detective Moreno to interfere with Plaintiff's electronic devices through a cell tower.  Plaintiff gives no indication on what this supposed "interference" has been such that no adverse action has been properly alleged with facial plausibility.  Given this lack of an adverse action allegation, Plaintiff fails to state a retaliation claim.   Accordingly, this claim is dismissed without prejudice.

I.   Warrantless Search of Home

Finally, Plaintiff alludes to warrantless searches of his home and the manipulation of his cellphone, laptop and security system.  The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," U.S. Const. amend. IV, and "this usually requires the police to have probable cause or a warrant before making an arrest."  *Herring v. United States*, 555 U.S. 135, 136 (2009).  While a warrantless home search is presumptively unreasonable, *see Payton v. New York*, 445 U.S. 573, 586 (1980), exceptions to this rule for probationers apply.  *See United States v. Baker*, 221 F.3d 438, 444 (3d Cir. 2000) (justification applies with perhaps even greater force to parolees given judgment that parolee needed incarceration).

Parole allows an individual to complete the final portion of a sentence outside of prison but subject to specified conditions.  *See State v. Black*, 153 N.J. 438, 447 (1998).  A parolee does not enjoy the same freedoms as an ordinary citizen, but rather has conditional liberty subject to the observance of various parole requirements.  *See Morrissey v. Brewer*, 408 U.S. 471, 480 (1972).

In *Griffin v. Wisconsin*, 483 U.S. 868 (1987), the United States Supreme Court upheld a search of a probationer conducted pursuant to a Wisconsin regulation permitting "any probation officer to search a probationer's home without a warrant as long as his supervisor approves and as long as there are 'reasonable grounds' to believe the presence of contraband." 483 U.S. at 870-87. The Wisconsin regulation was not an express condition of Griffin's probation, and applied to all Wisconsin probationers, with no need for a judge to make an individualized determination that the probationer's conviction justified the need for warrantless searches. The Court nevertheless held that a state's operation of its probation system presented a "special need" for the "exercise of supervision to assure that [probation] restrictions are in fact observed." *Id.* at 875. That special need for supervision justified the Wisconsin regulation and the search pursuant to the regulation was thus reasonable. *Id.* at 875-880.

Subsequently, in *United States v. Knights*, 534 U.S. 112 (2001), the United States Supreme Court ruled that the police can search a probationer's residence when the probationer is subject to a search provision, and the police have a reasonable suspicion that the probationer is engaging in illegal activity. *See* 534 U.S. at 121. In *Knights*, the individual's probation order contained a search provision that allowed law-enforcement officers to search his "person, property, place of residence, vehicle, or personal effects" in the absence of a search warrant, arrest warrant, or reasonable cause. *Id.* at 114. The Court held that the search was reasonable under the "totality of the circumstances." *Id.* at 118. But it did not invoke the "special needs" exception discussed in *Griffin*. Rather, the Court explained that the probationer had a reduced expectation of privacy and that the government had a strong interest in monitoring probationers. *See id.* at 121. Because the police had a reasonable suspicion that the probationer was engaging in illegal activity and the probationer was subject to a search provision, the search was deemed constitutional. *See id.*

19

Finally in *Sampson v. California*, 547 U.S. 843, 846-47 (2006), the Supreme Court held that a California police officer's suspicionless search of a parolee did not violate the Fourth Amendment.  The Court employed a multi-factor test, which included as a factor the broad consent to search required of California parolees as a condition of parole.  *Id.* at 852; *but see State v. O'Hagen*, 914 A.2d 267, 277 (N.J. 2007) ("The more stringent special needs analysis provides an appropriate framework for evaluating defendants New Jersey state constitutional claims[ ]" regarding suspicionless searches); *Brennan v. Dawson*, 752 F. App'x. 276, 284 (6th Cir. 2018) (plaintiff not subject to warrantless searches of his home because his probation in Michigan contained no such condition).

Article I, Paragraph 7 of the New Jersey Constitution also protects citizens against unreasonable searches and seizures.  *See O'Hagen*, 914 A.2d at 272.  Most relevant here, the New Jersey Supreme Court has held that "it is constitutionally permissible to subject parolees to 'conditions [that] restrict their activities substantially beyond the ordinary restrictions imposed by law on an individual citizen.'"  *J.B. v. State Parole Bd.*, 159 A.3d 1267, 1279 (N.J. 2017) (alteration in original) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 478 (1972)).  Like the Wisconsin statute at issue in *Griffin*, the New Jersey Administrative Code authorizes searches of a parolee's residence with a supervisor's approval where parole officers have "a reasonable articulable suspicion to believe that evidence of a violation of a condition of parole would be found in the residence or contraband which includes any item that the parolee cannot possess under the conditions of parole is located in the residence." N.J.A.C. § 10A:72-6.3; *State v. Maples*, 788 A.2d 314, 317-19 (N.J. Sup. Ct. App. Div. 2002).

"'[R]easonable suspicion' requires specific and articulable facts sufficient to justify a belief that the conditions of parole have been violated." *Maples*,788 A.2d at 317.  The New Jersey

Superior Court, Appellate Division has applied the "special needs" exception recognized in *Griffin* to a search of a parolee's home conducted by parole officers acting in accordance with state law. *See id.* at 318-19.  Moreover, the New Jersey Constitution does not require any greater limitation upon a parole officer's right to search, and any greater protection to a parolee, than the protections announced in *Griffin*.  *See id.* at 416 ("[W]e find no reason to conclude that the New Jersey Constitution requires any greater limitation upon a parole officer's right to search, and any greater protection to a parolee, than does federal law as enunciated in *Griffin v. Wisconsin* and *United States v. Hill* [, 967 F.2d 902 (3d Cir. 1992)].)

Under federal law, analysis of reasonable suspicion considers, under the totality of the circumstances, whether an official "has a particularized and objective basis for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002); *Keating v. Pittston City*, 643 F. App'x 219, 223–24 (3d Cir. 2016); *United States v. Wormsley*, 708 F. App'x 72, 74–75 (3d Cir. 2017).  Reasonable suspicion is defined as a "commonsense, nontechnical" concept that deals with "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Ornelas v. United States*, 517 U.S. 690, 695 (1996) (internal quotation marks omitted).  The standard for reasonable suspicion is less demanding than the standard for probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause. *See Alabama v. White*, 496 U.S. 325, 330 (1990).  Under Third Circuit law, reasonable suspicion also suffices to justify a parole agent's warrantless search of premises that parolees are on or have control of, including a parolee's residence, when an agent reasonably

believes that the premises contain evidence of a parole violation. *See United States v. Baker*, 221 F.3d 438, 443–44 (3d Cir. 2000); *United States v. Hill*, 967 F.2d 902, 908–09 (3d Cir. 1992).

Plaintiff asserts his rights were violated because of warrantless searches of his home. However, as the law recited above indicates, such searches, in and of themselves are not unconstitutional, provided the officer had reasonable suspicion.  Plaintiff does not allege that the searches of his home lacked reasonable suspicion.  Furthermore, and perhaps most importantly, Plaintiff fails to allege what named Defendants were personally involved in these purportedly unconstitutional searches.   This lack of personal involvement constitutes yet another reason requiring dismissal of this claim without prejudice for failure to state a claim upon which relief may be granted.

## V.    CONCLUSION

For the foregoing reasons, Plaintiff's claims against the State of New Jersey and the State of New Jersey Parole and Police Board are dismissed with prejudice for failure to state a claim upon which relief may be granted.  Plaintiff's remaining claims against the remaining Defendants are dismissed without prejudice for failure to state a claim upon which relief may be granted. Plaintiff shall be given one final opportunity to submit a proposed second amended complaint (should he elect to do so) that corrects the deficiencies of the Amended Complaint as pronounced in this Opinion with respect to the claims against Defendants dismissed without prejudice.  An appropriate Order will be entered.


DATED: October 31, 2023                                     _/s/Georgette Castner_
                                                        GEORGETTE CASTNER
                                                        United States District Judge